1

2

3

4                    UNITED STATES DISTRICT COURT

5                        DISTRICT OF NEVADA

6   MICHELLE E. JETT,                      Case No. 3:17-cv-00598-HDM-WGC

7                            Plaintiff,    **REPORT & RECOMMENDATION OF**
                                           **U.S. MAGISTRATE JUDGE**
8        v.
                                           Re: ECF Nos. 12, 13
9   NANCY A. BERRYHILL,
    Acting Commissioner of
10  Social Security Administration,

11                           Defendant.

12

13        This Report and Recommendation is made to the Honorable Howard D. McKibben, United

14  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

15  28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

16        Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 12) The

17  Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal.

18  (ECF Nos. 13, 14.)

19        After a thorough review, the court recommends that Plaintiff's motion be denied, and the

20  Commissioner's cross-motion be granted.

21                            **I. BACKGROUND**

22        On December 10, 2013, Plaintiff completed applications for disability insurance benefits

23  (DIB) under Title II of the Social Security Act and for supplemental security income (SSI) under

24  Title XVI of the Social Security Act. (Administrative Record (AR) 257-275.) She amended her

25  alleged onset date to August 28, 2012. (AR 412.) The applications were denied initially and on

26  reconsideration. (AR 173-91.)

27        Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 201-02.)

28  ALJ Janice Shave held a hearing on February 2, 2016. (AR 45-85.) Plaintiff, who was represented

1    by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken

2    from a vocational expert (VE). On March 14, 2016, the ALJ issued a decision finding Plaintiff not

3    disabled. (AR 22-37.) Plaintiff requested review, and the Appeals Council denied the request,

4    making the ALJ's decision the final decision of the Commissioner. (AR 1-7.)

5         Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

6    Plaintiff argues that the ALJ failed to articulate legally sufficient reasons for finding Plaintiff less

7    than credible.

8                                **II. STANDARD OF REVIEW**

9    **A. Substantial Evidence**

10        The court must affirm the ALJ's determination if it is based on proper legal standards and

11   the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*

12   *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is

13   'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

14   reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-

15   24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

16        To determine whether substantial evidence exists, the court must look at the record as a

17   whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740

18   F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not

19   affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*,

20   759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

21   2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical

22   testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

23   (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the

24   reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*,

25   740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being

26   said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply

27   proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222

28   (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court

will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed

1   Impairments are severe enough to preclude any gainful activity, regardless of age, education, or

2   work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the

3   Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled.

4   20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does

5   not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*,

6   482 U.S. at 141.

7          At step four, the Commissioner determines whether the claimant can still perform "past

8   relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past

9   relevant work is that which a claimant performed in the last fifteen years, which lasted long enough

10  for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and

11  § 416.920(b)(1).

12         In making this determination, the Commissioner assesses the claimant's residual functional

13  capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;*

14  20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is

15  what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In

16  determining RFC, the Commissioner must assess all evidence, including the claimant's and others'

17  descriptions of limitation, and medical reports, to determine what capacity the claimant has for

18  work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

19         A claimant can return to previous work if he or she can perform the "actual functional

20  demands and job duties of a particular past relevant job" or "[t]he functional demands and job

21  duties of the [past] occupation as generally required by employers throughout the national

22  economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and

23  citation omitted).

24         If the claimant can still do past relevant work, then he or she is not disabled for purposes

25  of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally,

26  a claimant who is physically and mentally capable of performing past relevant work is not disabled,

27  whether or not he could actually obtain employment.").

28  ///

- 4 -

1    If, however, the claimant cannot perform past relevant work, the burden shifts to the
2    Commissioner to establish at step five that the claimant can perform work available in the national
3    economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144.
4    This means "work which exists in significant numbers either in the region where such individual
5    lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do
6    the work he or she did in the past, the Commissioner must consider the claimant's RFC, age,
7    education, and past work experience to determine whether the claimant can do other work. *Yuckert*,
8    482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a
9    vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.
10    1999).

11    "The grids are matrices of the four factors identified by Congress—physical ability, age,
12    education, and work experience—and set forth rules that identify whether jobs requiring specific
13    combinations of these factors exist in significant numbers in the national economy." *Lockwood v.*
14    *Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and
15    citation omitted). The Grids place jobs into categories by their physical-exertional requirements,
16    and there are three separate tables, one for each category: sedentary work, light work, and medium
17    work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of
18    the numbers of unskilled jobs that exist throughout the national economy at the various functional
19    levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find
20    work, including the claimant's age, education and work experience. *Id*. For each combination of
21    factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the
22    national economy in that category. *Id*.

23    If at step five the Commissioner establishes that the claimant can do other work which
24    exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,
25    if the Commissioner determines the claimant unable to adjust to any other work, the claimant will
26    be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v.*
27    *Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).
28    ///

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through March 31, 2015, and had not engaged in substantial gainful activity since the alleged onset date of August 28, 2012. (AR 28.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: degenerative joint disease in the bilateral knees; lumbar spondylosis; lumbar radiculitis; spurring at the C2-C3 level; mild cartilage thinning of the bilateral hips; subchondral cyst formation; small posterior labral tear; mild ischiofemoral impingement; edema over greater trochanter; mild degenerative changes at the L5-S1, L4-L5, and L3-L4 levels with bulging; chronic pain syndrome; and obesity. (AR 28.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 28-29.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except she was limited as follows: she could never climb ladders, ropes, scaffolds, or stairs, and never kneel, crouch, or crawl; she could occasionally balance and climb ramps; she could not walk on uneven, wet, or cluttered surfaces; she must avoid concentrated exposure to extreme heat and vibrations, and must avoid all exposure to unprotected heights and operating moving machinery; she could understand, remember, and carry out simple instructions, and was able to perform simple, repetitive tasks. (AR 30.)

The ALJ then concluded Plaintiff was unable to perform any past relevant work. (AR 35.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: assembler (Dictionary of Occupational Titles (DOT) 734.687-018); table worker (DOT 739.687-182); nut sorter (DOT 521.687-086). (AR 36.) As a result, the ALJ found Plaintiff not disabled. (AR 37.)

///

**B. Plaintiff's Credibility**

 **1. Credibility Standard**

"[A] claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing SSR 96-7P)). Thus, a claimant's credibility is often crucial to a finding of disability. The ALJ is responsible for determining credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

There is a two-step test for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks and citations omitted) (emphasis original).

An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c), § 416.929(c). The ALJ may also consider ordinary techniques of credibility evaluation, or an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quotation

1    marks and citation omitted).

2    **2. Plaintiff's Subjective Symptom Statements**

3    Plaintiff completed a function report on January 27, 2014 (AR 328-336.) She complained

4    of severe back pain, as well as knee pain such that she was unable to sit or stand for long periods

5    of time. (AR 328.) She reported back pain so significant that it would wake her up at night.

6    (AR 329.) She had no issues with her personal care. (AR 329.) She was able to prepare her own

7    meals, and did laundry once or twice a week. (AR 330.) She shopped for supplies when necessary.

8    (AR 331.) Her hobbies and interests included watching television and feeding the ducks, with a

9    cane or walker. (AR 332.) She talked on the phone to others and visited friends three days a week.

10   (AR 332.) She indicated she could lift ten pounds, she could not squat, and bending hurt. (AR 333.)

11   She could not stand for a long period of time. (AR 333.) She was able to pay attention, and follow

12   written and spoken instructions. (AR 333.) She handled stress and changes in routine well.

13   (AR 334.)  She indicated the use of a cane and walker, and had a knee brace. (AR 334.)

14   Plaintiff completed another function report on August 28, 2014. (AR 363-370.) Again, she

15   complained of back and knee pain, radiating to her feet, with numbness. (AR 363.) She also

16   reported arthritis. (AR 363.) Some days she could not get out of bed due to the pain. (AR 364.)

17   Regarding personal care, she sometimes had difficulty. (AR 364.) She prepared her own meals.

18   (AR 365.) She was able to do laundry, put dishes in the dish washer, and wipe things down.

19   (AR 365.) She could clean when necessary. (AR 365.) She shopped for necessities once a month.

20   (AR 366.) Her interests and hobbies included reading and watching television, but she reported

21   she was not able to walk as much. (AR 367.) She spent time with others, and went to church and

22   doctors' appointments on a regular basis. (AR 367.) She indicated she was in pain all the time, and

23   the medicine made her tired. (AR 368.) Sometimes it was hard to lift a gallon of milk. (AR 368.)

24   She could not lift, squat, bend, stand, reach, walk, sit, kneel or climb stairs because it hurt too

25   much. (AR 368.) She could pay attention and follow instructions very well. (AR 368.) She handled

26   stress and change in routine very well. (AR 369.) She indicated the use of crutches, a walker, a

27   cane, a brace and glasses. (AR 369.)

28   ///

1    Plaintiff testified at the hearing that she could drive. (AR 60.) She could walk a little bit.

2    (AR 61.) She has had a walker since 2009, which she uses all the time, with occasional use of a

3    cane. (AR 61.) She reported throbbing pain in her back, which radiated down her leg, and she

4    experienced numbness and pain in her foot. (AR 66.) She also had bilateral knee pain. (AR 66.)

5    She also had neck pain. (AR 69.) She testified she did some things around the house, including

6    cooking. (AR 70.) She could sit for five to ten minutes before she had to get up. (AR 70.) She

7    could walk for about five minutes before she had to stop for pain. (AR 71.) She testified that if she

8    had to work for eight hours, she would need a break approximately every five minutes for a period

9    of thirty minutes. (AR 71.) She would lie down during the day to alleviate the pain. (AR 72.)

10    **3. ALJ Findings as to Plaintiff's Credibility**

11    The ALJ accurately summarized Plaintiff's adult function reports. (AR 31.) The ALJ also

12    accurately stated that Plaintiff's testimony was generally consistent with what she said in the adult

13    function reports. (AR 31.) The ALJ found Plaintiff's medically determinable impairments could

14    reasonably be expected to cause her alleged symptoms, but found Plaintiff's statements concerning

15    the intensity, persistence and limiting effects of the symptoms were not entirely credible. (AR 31.)

16    First, the ALJ noted that Plaintiff described daily activities that were not limited to the

17    extent one would expect given her complaints of disabling symptoms and limitations. (AR 31.)

18    The ALJ concluded that the reported activities demonstrated Plaintiff was more capable than

19    alleged with respect to the ability to perform basic sedentary work activities. (AR 31.)

20    Second, the ALJ stated that while the objective medical evidence supported Plaintiff's

21    assertion that her impairments limited her ability to work, the ALJ found there was insufficient

22    evidence to support her contention that her impairments prevent her from doing *all* work. (AR 31.)

23    **4. Analysis**

24    First, Plaintiff argues that the ALJ erroneously relied on daily activities that did not

25    contradict her testimony or apply in the work setting in discounting Plaintiff's credibility. Second,

26    Plaintiff argues that in finding that there was insufficient [objective] evidence to support the

27    contention that Plaintiff's impairments prevented her from doing all work, the ALJ was not

28    permitted to just summarize the evidence, but was required to provide specific, clear and

1   convincing reasons for rejecting Plaintiff's testimony.

2       The RFC in large part takes into account, and is consistent with, Plaintiff's subjective
3   complaints. To the extent the RFC varies from Plaintiff's subjective symptom statements, the court
4   finds that the ALJ set forth adequate reasons for finding these statements less than credible,
5   including the discussion of her daily activities and the objective medical evidence.

6       "Engaging in daily activities that are incompatible with the severity of symptoms alleged
7   can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th
8   Cir. 2014) (citations omitted). The ability to participate in some activities does not contradict
9   evidence of otherwise severe problems encountered in daily life. *Diedrich v. Berryhill,* 874 F.3d
10  634, 643 (9th Cir. 2017). To impact credibility, the activity has to be "inconsistent with [the
11  claimant's] claimed limitations." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). In other
12  words, daily activities that do not contradict a claimant's testimony or meet the threshold for
13  transferable work skills cannot form the basis of an adverse credibility determination. *Orn v.*
14  *Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). While being able to perform chores, cook meals, pay
15  bills and shop may not be similar to typical work responsibilities, these type of activities may
16  nevertheless be relevant to a credibility determination where inconsistent with the claimed
17  limitations.

18      Again, the sedentary RFC accounted for most of Plaintiff's claimed subjective limitations.
19  To the extent not all of her subjective symptoms were encompassed by the RFC, the ALJ
20  adequately pointed to Plaintiff's ability to engage in various daily activities as being consistent
21  with the ability to perform basic sedentary work activities. In other words, it was reasonable for
22  the ALJ to conclude that Plaintiff's activities, including the ability to prepare her own meals, do
23  laundry, clean, shop for necessities, watch television, visit others, and go to appointments,
24  contradicted her claim she could not perform basic activities in a sedentary job.

25      The court also finds the ALJ set forth sufficient reasons for finding Plaintiff's subjective
26  statements less than credible by discussing the objective evidence. An ALJ may not discredit a
27  claimant's testimony solely because the objective medical evidence does not support their
28  testimony, but may consider a lack of objective evidence as one element in the analysis. *Rollins v.*

1    *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

2        The court will address Plaintiff's arguments made with respect to the objective medial

3    evidence.

4        Plaintiff points out that the ALJ put a statement in the physical summary portion that

5    despite complains of pain in the right ankle, Plaintiff continued to show normal range of motion,

6    normal reflexes, normal mood and affect, normal behavior, judgment and thought content. Plaintiff

7    argues that the mental components have nothing to do with the physical condition, and so the

8    decision lacks logic and rationality. Regarding the physical notation, Plaintiff also argues that the

9    ALJ provided no citation to this finding.

10        The inclusion of the summary of her mental status was not in error because while it may

11    not touch specifically on her physical status, it is an accurate summary of the medical records, as

12    that information was included in the progress notes for the examination that date. (*See* AR 496.)

13    Regarding the argument that the ALJ failed to include citation, the paragraph clearly refers to

14    records from August 2012, and a cross-reference to those records makes clear it is those the ALJ

15    was summarizing. (*See* AR 495-96.)

16        In addition, Plaintiff contends that the ALJ failed to discuss follow up x-rays of the right

17    ankle on November 26, 2012, which showed questionable mild plantar fasciitis, minimal T2 signal

18    in the Achilles paratendon and abnormal morphology of anterior process of calcaneus.

19        The ALJ did note, however, that Plaintiff was seen in October 2012 to review the results

20    of her x-ray, which showed evidence of soft tissue swelling, but no fracture; she was prescribed a

21    walking boot and crutches, and an MRI was ordered, and that the MRI (which occurred on

22    November 26, 2012) showed some inflammation, but that Plaintiff reported she was financially

23    unable to see an orthopedic surgeon. (*See* AR 32, AR 492, AR 547.)

24        Plaintiff then argues that the ALJ also failed to address a treatment note dated January 21,

25    2013, which said Plaintiff was uninsured and could not afford orthopedics, and was advised to

26    continue using the walking boot as needed. The ALJ did note, however, that Plaintiff continued to

27    complain of pain in her right ankle throughout 2013, but noted her physical examinations still

28    showed normal range of motion and reflexes. (AR 32.)

1      Plaintiff then contends that the ALJ gave short shrift to Plaintiff's work history, which is
2  probative of credibility.

3      Plaintiff is correct that the regulations state that work history is a factor that is considered
4  in evaluating the intensity and persistence of symptoms and in determining the extent to which the
5  symptoms limit the capacity for work. 20 C.F.R. § 404.1529(c)(3), § 416.929(c)(3). The ALJ did
6  discuss Plaintiff's prior work and concluded that she could not perform her past relevant work.
7  The court is unaware of authority within the Ninth Circuit that requires the ALJ to affirmatively
8  discuss work history as being supportive of claimant credibility.

9      In sum, the court finds the ALJ set forth specific, clear and convincing reasons, supported
10  by substantial evidence in the record for finding Plaintiff's subjective statements to be less than
11  credible. Therefore, Plaintiff's motion should be denied, and the Commissioner's cross-motion to
12  affirm should be granted.

13  ### **IV. RECOMMENDATION**

14      **IT IS HEREBY RECOMMENDED** that the District Judge enter an order: **<u>DENYING</u>**
15  Plaintiff's motion (ECF No. 12), and **<u>GRANTING</u>** the Commissioner's cross-motion,
16  **<u>AFFIRMING</u>** the underlying decision.

17      The parties should be aware of the following:

18      1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local
19  Rules of Practice, specific written objections to this Report and Recommendation within fourteen
20  days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and
21  Recommendation" and should be accompanied by points and authorities for consideration by the
22  District Court.

23      2. That this Report and Recommendation is not an appealable order and that any notice of
24  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed
25  until entry of the District Court's judgment.

26      DATED: May 9, 2018.

27                          William G. Cobb
28                      WILLIAM G. COBB
                    UNITED STATES MAGISTRATE JUDGE